UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ADAM BROOK, M.D., PH.D.,

                    **Plaintiff,**

    **v.**

CATHERINE TETI, *et al.*,

                    **Defendants.**

Civil Action No.  15-02022 (TFH)

## MEMORANDUM OPINION

Plaintiff has sued the U.S. Department of Health and Human Services ("HHS" or "the Agency") and three individual HHS employees, alleging violations of the Privacy Act and the Freedom of Information Act ("FOIA") in connection with five requests he submitted to the Health Resources & Services Administration ("HRSA") for records concerning the National Practitioner Data Bank ("NPDB").

Upon consideration of the briefing, the relevant legal authorities, and the entire record herein, and for the reasons stated below, the Court finds that HHS has established that it conducted adequate searches for records responsive to Plaintiff's requests and that it appropriately withheld and redacted certain records.  Accordingly, the Court will grant Defendants' Motion for Summary Judgment [ECF No. 32] and will deny Plaintiff's Cross-Motion for Partial Summary Judgment [ECF No. 35].

## I.    BACKGROUND

The National Practitioner Data Bank is a "web-based repository of reports containing information on medical malpractice payments and certain adverse actions related to health care

practitioners, providers, and suppliers." NPDB, About Us, https://www.npdb.hrsa.gov/topNavigation/aboutUs.jsp (last visited Feb. 13, 2023). The NPDB is managed by the HRSA, which is a component agency of HHS, and at issue here are five separate FOIA requests Plaintiff submitted to HRSA for records related to the NPDB.[1] In total, HHS processed 3,057 pages of records in response to Plaintiff's five FOIA requests and released 2,469 pages in full or in part. Flavin Decl. ¶¶ 15, 28, 42, 56 [ECF No. 32-3].

### A. Request No. 1

Plaintiff's first request, dated August 6, 2012, sought "all documents pertaining to me, Adam Brook, that HRSA has." Compl. ¶ 37; Flavin Decl. ¶ 7. HHS initially released approximately 500 pages of responsive documents to Plaintiff, and after an additional search in response to an administrative appeal filed by Plaintiff, HHS located approximately 200 additional pages of responsive documents. Flavin Decl. ¶¶ 11-13. HHS located 689 pages of documents responsive to FOIA Request No. 1; pursuant to FOIA Exemptions 3, 5, and 6, 41 pages were withheld in full and 22 pages were released in part. *Id.* ¶¶ 15-20.

### B. Request No. 2

Plaintiff's second request, dated September 19, 2012, sought various NPDB registration and subscriber documents. Compl. ¶ 38; Flavin Decl. ¶ 22. He requested "blank registration forms, 'the first and two most recent filings of NPDB registration documents for Peconic Bay Medical Center,' screenshots of webpages related to making a NPDB query, and records related

---

[1] The genesis of this case is a 2009 report submitted to the NPDB by Plaintiff's former employer. For an account of the complex procedural history and factual background of the related litigation between the parties, *see, e.g., Brook v. Rogers*, Civil Action No. 12-1229 (TFH), 2023 WL 1778792 (D.D.C. Feb. 2, 2023); *Doe v. Rogers*, 139 F. Supp. 3d 120 (D.D.C. 2015).

to the June 8, 2010 release of Plaintiff's NPDB reports."   Flavin Decl. ¶ 22.  HHS located 43

pages of documents responsive to FOIA Request No. 2; no pages were withheld in full, and one

page was released in part pursuant to FOIA Exemption 3.  *Id.* ¶¶ 28-29.

### C.  Request No. 3

Plaintiff's third request, dated December 18, 2012, sought "all Adverse Action Reports

submitted to the National Practitioner Data Bank between December 1, 1989 and the present that

were subsequently voided by the Secretary . . . as well as any accompanying letters explaining

the Secretary's decision."  Compl. ¶ 39; Flavin Decl. ¶ 30.  HHS denied Plaintiff access to the

requested records pursuant to FOIA Exemption 3.  Flavin Decl. ¶ 31.  Plaintiff filed an

administrative appeal, and "HHS denied Plaintiff's appeal on the basis that information

concerning specific reports and disputes could be utilized to ascertain the identities of other

practitioners who had been reported to the NPDB and other protected information."  *Id.* ¶¶ 33-

34.

### D.  Request No. 4

Plaintiff's fourth request, dated January 29, 2013, sought "every e-mail [HRSA Dispute

Resolution Manager] Dr. [Anastasia] Timothy has ever sent and every e-mail Dr. Timothy has

ever received."  Compl. ¶ 41; Flavin Decl. ¶ 35.  By letter dated October 9, 2014, Plaintiff agreed

to limit the scope of Request No. 4 to all emails dating from June 1, 2010 that contained any of a

list of 25 keywords.  Compl. ¶ 55; Flavin Decl. ¶ 36.  HHS located 364 pages of documents

responsive to FOIA Request No. 4; no pages were withheld in full, and 67 pages were released in

part pursuant to FOIA Exemptions 3, 5, and 6.  Flavin Decl. ¶¶ 42-47.

### E. Request No. 5

Plaintiff's fifth request, dated May 13, 2015, sought all emails sent or received by an HRSA employee dating from June 1, 2010 containing any of a list of 30 keywords.  Compl. ¶ 61; Flavin Decl. ¶ 49.  HHS located 1,961 pages of documents responsive to FOIA Request No. 5; pursuant to FOIA Exemptions 3, 4, 5, 6, and 7, 547 pages were withheld in full and 304 pages were released in part.  Flavin Decl. ¶¶ 56-63.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to cross-motions for summary judgment, "neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion."  *Vaughan v. Amtrak,* 892 F. Supp. 2d 84, 91 (D.D.C. 2012) (quoting *Sherwood v. Washington Post,* 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989)).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *ViroPharma Inc. v. Dep't of Health & Human Servs.*, 839 F. Supp. 2d 184, 189 (D.D.C. 2012). "The agency is entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information."  *Prop. of the People, Inc. v. Off. of Mgmt.*

*& Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (citations omitted).  An agency can sustain

its burden by means of affidavit, and where the affidavit "describes the justifications for

withholding the information with specific detail, demonstrates that the information withheld

logically falls within the claimed exemption, and is not contradicted by contrary evidence in the

record or by evidence of the agency's bad faith, then summary judgment is warranted on the

basis of the affidavit alone." *Am. Civil Liberties Union v. Dep't of Defense*, 628 F.3d 612, 619

(D.C. Cir. 2011) (citations omitted).

## III.  ANALYSIS

### A.  Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material

doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia-*

*Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal citation and quotation

marks omitted).  "At the summary judgment stage, where the agency has the burden to show that

it acted in accordance with the statute, the court may rely on '[a] reasonably detailed affidavit,

setting forth the search terms and the type of search performed, and averring that all files likely

to contain responsive materials (if such records exist) were searched.'" *Id.* at 326 (quoting

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  Such affidavits "enjoy a

presumption of good faith, which will withstand purely speculative claims about the existence

and discoverability of other documents." *Ground Saucer Watch, Inc. v. Cent. Intel. Agency*, 692

F.2d 770, 771 (D.C. Cir. 1981).  "The law of this Circuit does not demand that 'the affidavits of

the responding agency set forth with meticulous documentation the details of an epic search for

the requested records.  Rather[,] . . . affidavits that explain in reasonable detail the scope and

method of the search conducted by the agency will suffice to demonstrate compliance.'" *Wolf v. Cent. Intel. Agency*, 569 F. Supp. 2d 1, 7 (D.D.C. 2008) (quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)).

Here, the Court concludes that HHS has met its burden of demonstrating beyond material doubt that its searches for each of the five requests received from Plaintiff were reasonably calculated to uncover all relevant documents.  Plaintiff has failed to point to any evidence showing that the Agency's search was not "reasonably calculated to uncover all relevant documents."  In support of its summary judgment motion, HHS submitted detailed declarations from HRSA's FOIA Officer, Thomas Flavin [ECF No. 32-3]; HRSA's Deputy Director of the Division of Practitioner Data Banks, Judy Rogers [ECF No. 32-4]; and HRSA's Chief Information Security Officer, Brent Kopp [ECF No. 32-5].  These declarations explain in detail the searches that were performed for documents responsive to Plaintiff's five requests, and establish that "all files likely to contain responsive materials" were searched.  Flavin Decl. ¶¶ 8, 23, 37, 50; Rogers Decl. ¶¶ 5-7, 9, 10; Kopp Decl. ¶¶ 5, 8.  HHS is entitled to summary judgment with respect to the adequacy of its searches.

### B.   Withholdings & Redactions

#### 1.   FOIA Exemption 3

Exemption 3 incorporates nondisclosure provisions contained in other federal statutes. *See* 5 U.S.C. § 552(b)(3).  HHS applied Exemption 3 to withhold certain records containing the identities of other health care practitioners reported to the NPDB and other details of their reports contained in various communications on the basis that the information is exempted from disclosure under the confidentiality provisions of 42 U.S.C. § 11137(b)(1).  Flavin Decl. ¶¶ 16,

43, 57.  The Court agrees with HHS's conclusion that Section 11137(b)(1) meets the requirements of Exemption 3, which covers records that are "specifically exempted from disclosure by statute . . ., if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establishes particular criteria for withholding or refers to particular types of materials to be withheld."  5 U.S.C. § 552(b)(3).  Section 11137(b)(1) states that information reported to the NPDB "is considered confidential and shall not be disclosed" except (1) with respect to professional review activity; (2) as necessary to comply with requests for information from hospitals as required by 42 U.S.C. § 11135; or (3) in accordance with NPDB regulations.  Based upon a review of the Mr. Flavin's Declaration and the detailed *Vaughn* Index attached to his declaration, none of the information withheld from disclosure by HHS falls within these exceptions.  The Agency's withholding of NPDB reporting information related to other health care providers, as required by section 11137(b)(1), was proper.  HHS is entitled to summary judgment on its withholdings under Exemption 3.

### 2.  FOIA Exemption 4

Exemption 4 protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  Here, HHS applied Exemption 4 to withhold a presentation prepared by a government contractor regarding the manner in which the NPDB contractor processes credit card transactions and a financial analysis of the options.  Flavin Decl. ¶ 58.  As explained by HHS, "[t]his information constitutes commercial or financial information that is confidential in nature."  *Id.*  Plaintiff does not present any evidence that contradicts HHS's reasoning for withholding this presentation, and HHS is entitled to summary judgment on its withholding under Exemption 4.

-7-

### 3.  FOIA Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  As relevant here, "Exemption 5 incorporates the privileges that the Government may claim when litigating against a private party," including the attorney-client and attorney work-product privileges and the deliberative process privilege.  *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015).

Here, HHS withheld internal HHS documents (inter-agency records) and documents "exchanged with contractor who is responsible for assisting in the day-to-day operations of the NPDB," Flavin Decl. ¶ 17, which qualify as "intra-agency" records.  *McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 336 (D.C. Cir. 2011) ("Under the 'consultant corollary' to Exemption 5, however, we interpret 'intra-agency' 'to include agency records containing comments solicited from nongovernmental parties.'" (quoting *Nat'l Inst. of Military Justice v. U.S. Dep't of Defense*, 512 F.3d 677, 680, 682 (D.C. Cir. 2008)).

#### i.      *Deliberative Process Privilege*

To qualify for the deliberative process privilege, a document must be "both predecisional and deliberative."  *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020).  A document is predecisional "if it was generated before the adoption of an agency policy."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  This Circuit recognizes that

> [d]etermining whether a document is deliberative is less straightforward than determining whether it is predecisional in part because of the sheer variety of ways in which a document can be deliberative. As we have explained, the deliberative process privilege is "dependent upon the individual document and the role it plays

in the administrative process." *Coastal States*, 617 F.2d at 867. In *Senate of Puerto Rico v. DOJ* our court explained that the agency invoking the deliberative process privilege must show (1) "what deliberative process is involved," and (2) "the role played by the documents in issue in the course of that process." 823 F.2d 574, 585–86 (D.C. Cir. 1987) (quoting *Coastal States*, 617 F.2d at 868). To "assist the court in determining whether th[e] privilege is available," the agency should also explain (3) the "nature of the decisionmaking authority vested in the officer or person issuing the disputed document," and (4) the "relative positions in the agency's chain of command occupied by the document's author and recipient." *Id.* at 586.

*Jud. Watch, Inc. v. U.S. Dep't. of Justice*, 20 F.4th 49, 55 (D.C. Cir. 2021).

Here, HHS has established that the documents it withheld pursuant to the deliberative process privilege under Exemption 5 were both predecisional and deliberative. As detailed in the Flavin Declaration and the supporting *Vaughn* Index, the documents exchanged with the contractor contained "advice, recommendations, opinions and draft documents. Many of the materials . . . were draft documents, suggested language for draft documents, or contained advice about draft documents. The drafts at issue contained the authors' recommendations about what the final documents should say." Flavin Decl. ¶¶ 17, 44, 59; *see also Vaughn* Index. These documents were properly withheld under Exemption 5.

ii.     *Attorney-Client Privilege*

The Court likewise finds HHS has demonstrated it properly withheld certain documents on the basis of attorney-client privilege. As explained in Mr. Flavin's declaration, "[t]he redacted materials include communications with agency attorneys regarding draft dispute resolution letters, analysis of the merits of ongoing litigation, litigation strategy, allegations of improper access to the NPDB, and review of agency guidance." Flavin Decl. ¶¶ 18, 45, 60. The *Vaughn* Index confirms that Exemption 5 was properly invoked by HHS to withhold these documents pursuant to the attorney-client privilege.

iii. *Attorney Work-Product Doctrine*

Similarly, HHS withheld certain records pursuant to the attorney work-product doctrine, including: an agency attorney's advice concerning a draft letter connected to ongoing litigation; an agency attorney's legal analysis of litigation; materials related to a litigation hold; a draft declaration for a litigation, and an agency attorney's advice concerning compilation of an administrative record.  Flavin Decl. ¶¶ 19, 46, 61.  These documents were properly withheld pursuant to Exemption 5, and HHS is entitled to summary judgment on its withholding under Exemption 5.

### 4. FOIA Exemption 6

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Here, HHS applied Exemption 6 to redact the identities of cell phone numbers, the identities of practitioners reported to the NPDB and other details regarding their NPDB reports, and other personal information on the basis that the release would "constitute a clearly unwarranted invasion of personal privacy."  Flavin Decl. ¶¶ 20, 47, 62.  If the requested information is contained in a personnel, medical, or other similar file, the Court must then "determine whether the information is of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion."  *Natl. Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (citing *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 598 (1982)).  As the D.C. Circuit has further explained,

> [t]o establish that the release of information contained in government files would result in a clearly unwarranted invasion of privacy, the court first asks whether disclosure would compromise a substantial, as opposed to a *de minimis,* privacy interest.  If a significant privacy interest is at stake, the court then must weigh that

interest against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy. The public interest to be weighed against the privacy interest in this balancing test is the extent to which disclosure would serve the core purposes of the FOIA by contributing significantly to public understanding of the operations or activities of the government. Thus, unless a FOIA request advances the citizens' right to be informed about what their government is up to, no relevant public interest is at issue.

*Id.* at 33-34 (internal citations and quotations omitted).

Plaintiff has not identified any documents that he claims were improperly withheld under Exemption 6, and the Court finds that the Agency has established that release of the information at issue would result in an unwarranted invasion of privacy.  HHS is entitled to summary judgment on its withholdings under Exemption 6.

### 5.  FOIA Exemption 7

Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." *See Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) ("[O]ur decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants.").  HHS applied Exemption 7 to redact the identity of an Office of Inspector General investigator from guidance prepared and sent by the Director of Medicaid Fraud Policy and Oversight Division.  Flavin Decl. ¶ 63.  The Court agrees that this information was properly redacted to avoid the unwarranted invasion of personal privacy, and HHS is entitled to summary judgment on its withholding under Exemption 7.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that the Agency's search was reasonably calculated to uncover all responsive records and that it properly withheld certain information pursuant to FOIA Exemptions 3, 4, 5, 6, and 7.  Accordingly, the Court will grant Defendants' Motion for Summary Judgment [ECF No. 32] and will deny Plaintiff's Cross-Motion for Summary Judgment [ECF No. 35].  This case will be dismissed with prejudice.  An appropriate Order accompanies this Opinion.

February 17, 2023

_____
THOMAS F. HOGAN
SENIOR UNITED STATES DISTRICT JUDGE